UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EDDIE LOUIS BALLARD,

    Defendant.

Case No. 17-20691
Honorable Laurie J. Michelson

**OPINION AND ORDER ON DEFENDANT'S MOTION
FOR REDUCTION OF SENTENCE [32]**

Having served a little less than one year of his 47-month sentence for possession with intent to distribute methamphetamine, Defendant Eddie Ballard seeks compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), because of the ongoing coronavirus pandemic and his underlying health conditions. The Government opposes the request. After evaluating the applicable sentencing factors and finding no extraordinary and compelling reason for early release at this time, the motion is DENIED.

**I.**

After law enforcement found drugs they associated with Ballard, Ballard pled guilty and was sentenced to almost four years in prison. In particular, law enforcement executed search warrants at residences connected to Ballard on June 28, 2017, and recovered methamphetamine. (ECF No. 24, PageID.65.) Ballard ultimately pleaded guilty on May 1, 2019, to one count of possession with intent to distribute methamphetamine. (ECF No. 24.) This was Ballard's eighth felony conviction, most of which were drug-related offenses. (ECF No. 28, PageID.97–98 (citing Presentence Report).) Ballard was sentenced on October 2, 2019, to 47 months' imprisonment.

(ECF No. 29.) He began serving his sentence on January 9, 2020. (ECF No. 30.) Ballard is currently incarcerated at the Federal Correctional Institution Milan in Michigan and, with good time credits, has a projected release date of March 17, 2023. (ECF No. 37, PageID.227.)

Ballard has now filed a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 32.) He claims to have asthma, chronic bronchitis, and frequent upper respiratory infections for which he takes azithromycin. (ECF No. 32, PageID.121.) And, says Ballard, his "documented susceptibility to respiratory illness puts him at significantly increased risk for serious illness due to COVID-19." (*Id.* at PageID.122.) While the government adds Ballard's status as a former smoker, this was not raised by Ballard. Having reviewed the briefing and all of the attachments, the Court does not believe oral argument would aid in the resolution of the motion. *See* E.D. Mich. LR 7.1(f).

## II.

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to this rule is compassionate release. As recently summarized by the Sixth Circuit, four requirements must be satisfied for a defendant's motion for compassionate release to be granted: "(1) the defendant must exhaust all administrative rights to appeal as set out in 18 U.S.C. § 3582(c)(1)(A), (2) the district court must analyze the motion against the factors set forth in Section 3553(a) 'to the extent that they are applicable,' (3) the court must find extraordinary and compelling circumstances warranting compassionate release, and (4) the court must find that release is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Gaston*, No. 20-3769 (6th Cir. Nov. 23, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i) and *United States v. Ruffin*, 978 F.3d 1000, 1003–05 (6th Cir. 2020)). In these defendant-initiated compassionate release cases, though, "the passage of the First Step

Act rendered § 1B1.13 [policy statements] 'inapplicable.'" *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020). District courts may deny relief on any one of these requirements alone. *See Ruffin*, 978 F.3d 106.

### A.

The statutory exhaustion requirement is mandatory. *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Ballard submitted a request to the warden for compassionate release which was denied on June 10, 2020. (ECF No. 32-2, PageID.137.) The Government concedes that Ballard exhausted his administrative remedies. (ECF No. 37, PageID.227.)

### B.

Ballard must demonstrate "extraordinary and compelling reasons" to justify his early release.

### 1.

The term "extraordinary and compelling" is not defined in the statute; instead, another provision, 28 U.S.C. § 994(t), directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons . . . including the criteria to be applied and a list of specific examples." The Sentencing Commission has done so in the commentary to the applicable policy statement, USSG § 1B1.13, setting forth four specific categories. USSG § 1B1.13, comment n.1. But this policy statement and accompanying commentary have not been updated since the passage of the First Step Act of 2018, which amended § 3582(c)(1)(A) to permit defendants to file motions for compassionate release on their own behalf. As a result, the policy statement still provides that a sentence reduction may be granted only on the Bureau of Prison's motion. *See* USSG § 1B1.13 & comment n.4. Thus, says the Sixth Circuit, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in

3

the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Jones*, 980 F.3d at 1109.[1]

**2.**

Compassionate release is aptly named during a once-in-a-lifetime global pandemic. As is now well known, the deadly "COVID-19 virus is extremely contagious and conditions favor its more rapid transition in detention or correctional facilities." *United States v. You*, No. 20-5390, 2020 WL 3867419, at *1 (6th Cir. Apr. 22, 2020) (Order). But the mere existence of the pandemic has not been found to be an extraordinary and compelling reason as this would result in the release of all federal prisoners. And the courts have also consistently found that "[a]n inmate's generalized fear of contracting Covid-19, without more, does not rise to the level of an extraordinary and compelling circumstance." *United States v. Urrabazo-Maldonado*, No. 20-3727, 2020 U.S. App. LEXIS 29873, at *4 (6th Cir. 2020) (unpublished); *see also United States v. Raia*, 954 F.3d 594, 2020 WL 1647922, at *2 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

---

[1] The government takes the position that "*Jones*'s analysis on that point was incorrect" and is merely dicta. (ECF No. 37, PageID.236.) The government relies on the concurrence in *Jones*. But the fact that the concurrence did not think the majority needed to decide the issue, does not make its decision dicta. As the Sixth Circuit has since stated, "we *recently held* that this policy statement [§ 1B1.13] applies only to motions filed by the Bureau of Prisons, not to motions filed by defendants themselves after the First Step Act." *United States v. Howton*, No. 20-5878, 2020 U.S. App. LEXIS 39233, at *1 (6th Cir. Dec. 14, 2020) (order) (citing *United States v. Jones*, 2020 U.S. App. LEXIS 36620, 2020 WL 6817488, at *7–9 (6th Cir. Nov. 20, 2020) (emphasis added)); *see also United States v. Ammons*, No. 20-5799, 2020 U.S. App. LEXIS 38494, at *2–3 (6th Cir. Dec. 9, 2020) ("Since the district court ruled on [defendant's] motion, *we have held* that the policy statement relevant to compassionate release motions, USSG § 1B1.13, applies only to motions filed by the Bureau of Prisons and does not apply in cases in which the defendant has filed a motion on his own behalf, as [defendant] did." (emphasis added)). This Court is bound by and will follow *Jones*.

4

So what is an extraordinary and compelling circumstance in the context of this unprecedented pandemic? In making this determination, this Court, like many others in this District, has considered whether "defendants had severe medical conditions which placed them at high risk of coronavirus infection, were housed at a facility with confirmed cases, and had served a large majority of their sentences." *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948, at *3 (E.D. Mich. June 10, 2020). Post-*Jones*, these remain appropriate considerations.

**3.**

It is true that, despite the BOP's efforts to deal with the pandemic as detailed in the government's response (ECF No. 37, PageID.227–233), Milan is presently experiencing a COVID outbreak, with positive cases being reported among 13 staff members and 32 inmates as of January 4, 2021. Federal Bureau of Prisons, *COVID-19 Update*, https://perma.cc/R7KR-NRBA. The 40-year-old Ballard, who has served a little less than a year of his sentence, says the "extraordinary and compelling circumstances presented in the instant case relate to the significant health risk to [him] as a result of the COVID-19 pandemic and his underlying health conditions." (ECF No. 32, PageID.121.)

Unfortunately, Ballard's medical records do not present a consistent picture. Nor do they present as dire a situation as he portrays. Ballard visited Genesee Urgent Care on April 20, 2010. The results of his imaging were "no active pulmonary disease." (ECF No. 35, PageID.157.) In addition to this visit, Ballard was also seen at Genesee Urgent Care on February 3 and August 18, 2014, September 12, 2015, and May 30, 2019. (ECF No. 35.) Each time his chief complaint was a cough with "yellow thick phlegm production." (*Id.* at PageID.149, 151, 153–155.) He reported no wheezing or shortness of breath. (*Id.*) His "past medical history" (PMH) was recorded as "healthy" during his 2010 and 2014 visits. (*Id.* at PageID.153–155.) In 2015 and 2019, the PMH changed to

5

"healthy; chronic bronchitis (disorder)." (*Id*. at PageID.149, 151.) But for each visit, the ultimate "assessment" was either a cough or acute bronchitis. (*Id*. at PageID.149, 151, 153–155.)

The difference between acute and chronic bronchitis matters. "Acute bronchitis, also called a chest cold, usually improves within a week to 10 days without lasting effects, although the cough may linger for weeks. However, if [someone has] repeated bouts of bronchitis, [he] may have chronic bronchitis, which requires medical attention. Chronic bronchitis is one of the conditions included in chronic obstructive pulmonary disease (COPD)." Mayo Clinic, *Bronchitis*, https://perma.cc/PX84-3X4A. And COPD is one of the conditions recognized by the Centers for Disease Control as putting adults of any age at an increased risk of severe illness from the coronavirus. *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://perma.cc/5XPA-3PK4.

The medical records support that, over the course of the last 10 years, Ballard has been diagnosed with acute bronchitis on a few occasions. But the medical records do not reveal a severe respiratory illness. The only medical condition referenced in Ballard's presentence report is some aches and pains as a result of a 2001 motorcycle accident. (Presentence Report, ¶ 68.) The report makes no mention of asthma, bronchitis, or any other pulmonary issues. Nor do the prison medical records that Ballard provided. To the contrary, his January and February 2020 BOP records indicate that Ballard denied any respiratory issues and that his respiratory system was "within normal limits." (ECF No. 35, PageID.168, 172, 179, 197.) As of October 2020, his only listed "current" health problems are pain in his foot, injury to his elbow, and a dental issue. (*Id*. at PageID.160.) And there has been no prescription for azithromycin. (*Id*. at PageID.196.)

The government provided additional prison medical records from October 22, 2020. (ECF No. 38.) These records indicate that Ballard presented with breathing problems and, for the first

6

time, mentioned a history of asthma. (ECF No. 38, PageID.253.) He was prescribed an Albuterol inhaler as needed. (*Id.*) This is the only mention of asthma in Ballard's medical records.

As was the case at sentencing, Ballard appears to be relatively healthy. His prior bouts of bronchitis do not presently warrant ending his term of imprisonment after having served less than a quarter of his sentence. *See, e.g.*, *United States v. Tubbs*, No. 18-cr-45, 2020 U.S. Dist. LEXIS 236818, at *5 (S.D. Ohio Dec. 16, 2020) (finding no extraordinary and compelling reason for granting compassionate release where defendant "asserts that he has bronchitis, but the medical records he submits are several years old and vary in diagnosis" such that the court could not "find any evidence that [defendant] currently has bronchitis."); *United States v. Harper*, No. 17-20411, 2020 U.S. Dist. LEXIS 184791, at *3–4 (E.D. Mich. Oct 6, 2020) (finding a bare notation of bronchitis in 2016 did not shed light on defendant's current medical condition and was contradicted by more recent prison records and thus, defendant's medical condition did not meet the "extraordinary and compelling" standard); *United States v. Wilson*, No. 15-20281, 2020 U.S. Dist. LEXIS 103809, at *5 (E.D. Mich. June 15, 2020) ("While Defendant claims to suffer from asthma and bronchitis, the record does not contain sufficient evidence to establish the severity of those conditions.").

Nor is the Court able to conclude that Ballard suffers from moderate to severe asthma, which is the condition the Centers for Disease Control and Prevention has identified as putting one at an increased risk for severe illness from COVID-19. *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://perma.cc/8BCH-8MNA. And it appears his breathing issues are being managed. *See United States v. Taylor*, 17-20791, 2020 U.S. Dist. LEXIS 158236, at *1 (E.D. Mich. Sept. 1, 2020) (court found moderate asthma being

7

controlled with the use of an inhaler did not constitute extraordinary and compelling circumstance warranting compassionate release).

The government likewise argues that Ballard's medical records do not support a finding of moderate to severe asthma or chronic bronchitis. (ECF No. 37, PageID.239–240.) The government goes on to opine, however, that "[g]iven the heightened risk that Covid-19 poses to someone who is a former smoker, Ballard has shown 'extraordinary' reasons for release under § 3582(c)(1)(A)." (ECF No. 37, PageID.240.) This does not alter the Court's conclusion. First, the government recognizes that there is case law to the contrary. (*Id*. at PageID.241.) Also, the government contends that "Ballard's reasons for release are not 'compelling'" (even if extraordinary). (*Id*. at PageID.242.) More significant to the Court, however, is that Ballard does not raise this issue. And it appears, to his credit, that Ballard quit smoking at least five years ago. (ECF No. 35, PageID.151.) So the Court finds his status as a former smoker neither extraordinary nor compelling. *See United States v. Green*, No. 17-20822, 2020 WL 6144556, at *5 (E.D. Mich. Oct. 20, 2020).

In short, while the Court certainly appreciates Ballard's legitimate concerns about the pandemic, his risk of exposure to COVID-19 does not appear significantly different from any other federal inmate. At this time, the Court is not convinced that Ballard's medical condition places his health and safety at such great risk to constitute extraordinary and compelling reasons for reduction of his sentence, especially "when considering the great number of people both in and out of prison who are facing these same challenges." *United States v. Williams*, No. 20-3839, 2020 U.S. App. LEXIS 35649, at *4 (6th Cir. Nov. 12, 2020).

### III.

The government persuasively argues that, even assuming the existence of extraordinary and compelling reasons, evaluation of the sentencing factors in 18 U.S.C. § 3553(a) does not support a reduction in Ballard's sentence. The government focuses on the seriousness of methamphetamine distribution, Ballard's significant criminal history, the danger this poses to the community, his? repeated lack of respect for the law, the failure of prior sentences to deter his conduct, and the COVID-19 risks to Ballard and others should he return to drug trafficking. (ECF No. 37, PageID.243–248.) Indeed, it was only 15 months ago that the Court evaluated the § 3553(a) factors during Ballard's sentencing. Ballard is in the highest criminal history category—VI. That history incudes at least five convictions involving drugs, a gun conviction, a fleeing and eluding conviction, and multiple incidents of misconduct while in jail.

Ballard counters that he has "demonstrated substantial evidence of rehabilitation since his indictment" and that such "evidence of post-sentence rehabilitation is likely the most critical of core considerations for the Court in a § 3582(c) proceeding." (ECF No. 32, PageID.126.) What, precisely, this post-sentence rehabilitation consists of is undisclosed. In discussing his history and characteristics, Ballard simply says he has completed an FSA job skills class and "has not received any shots [sic] throughout his incarceration." (*Id.* at PageID.127.) This is a good start. But not a résumé to support a significant reduction in sentence. Ballard also says that his supportive family reduces his risk of danger. But family support has not prevented Ballard's criminal conduct to date and the Court considered this support in determining a sentence that was sufficient but not greater than necessary.

## IV.

Because Ballard has not demonstrated extraordinary and compelling reasons to reduce his sentence to time served, and the § 3553(a) factors do not support such a reduction, Ballard's request for compassionate release (ECF No. 32) is DENIED WITHOUT PREJUDICE.

SO ORDERED.

Dated: January 5, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
